# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JESSE STEWART, *et al.*, | Civil No. 06-4872 (JRT/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CITY OF RED WING, JAY OWENS, and GENE DURAND, | |
| Defendants. | |

Lee U. McGrath, **INSTITUTE FOR JUSTICE**, Minnesota Chapter, 1600 Rand Tower, 527 Marquette Avenue, Minneapolis, MN 55402; Dana Berliner, **INSTITUTE FOR JUSTICE**, 901 North Glebe Road, Suite 900, Arlington, VA 22203-1854; William R. Maurer, **INSTITUTE FOR JUSTICE**, 101 Yesler Way, Suite 603, Seattle, WA 98104-3448, for plaintiffs.

John M. Baker and Pamela L. VanderWiel, **GREENE ESPEL, PLLP**, 200 South Sixth Street, Suite 1200, Minneapolis, MN 55402-1415, for defendants.

Defendant City of Red Wing adopted an ordinance requiring landlords to obtain licenses for rental properties. Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, alleging that the ordinance violates their rights under the Fourth Amendment by, among other things, conditioning the right to rent property on their consent to an illegal search. This case is now before the Court on the parties' cross-motions for summary judgment. Plaintiffs have also filed a motion for a preliminary injunction enjoining a pending state court proceeding. For the reasons discussed below, the Court denies plaintiffs' motions

for a preliminary injunction and for summary judgment, and grants defendants' motion
for summary judgment.

## BACKGROUND

Plaintiffs are a group of landlords and tenants located in Red Wing, Minnesota.
In 2003, defendant City of Red Wing (the "City") commissioned a Housing Study of
existing housing needs and conditions in the City ("Study"). The Study provided updated
demographic information and a variety of housing data, including data regarding the age
and condition of the existing housing inventory in the City. The Study identified a high
demand for rental housing, and determined that much of the City's rental housing was
aging. According to the Study, thirty-six percent of occupied rental housing was built
prior to 1940, and forty-six percent was built prior to 1960. The Study also identified an
increased need for housing rehabilitation and repair as the available supply of rental
housing ages.

Based on these and other findings, the Study recommended that the City establish
a rental inspection program to assure that all rental units in Red Wing comply with
housing laws and codes and that all Red Wing rental units are safe and sanitary.[1] The
Study recommended alternatively that the City review its housing code to determine
whether it needs to be updated to address the City's rental unit needs. In 2004, the Red
Wing City Council adopted the Housing Study as part of its Comprehensive Guide Plan

---

[1] The study also noted that rental inspection programs "generally meet with controversy
and resistance from rental property owners." (Peterson Aff. Ex. A at 78.)

and formed a Housing Code Committee to consider an inspection and licensing program for rental properties. The Committee drafted a proposed rental inspection and licensing ordinance, and held public hearings on the draft ordinance in October 2004.

On February 28, 2005, the City adopted the rental inspection and licensing ordinance as part of its revised Housing Maintenance Code ("HMC") and Rental Dwelling Licensing Code ("RDLC"). *See* Red Wing Ord. §§ 4.30, 4.31. The HMC establishes detailed minimum standards for rental housing in the City, including provisions for the maintenance of exterior walls, fences, lighting, and walkways, among other things. The HMC also establishes minimum standards for basic services and utilities, including plumbing, heating, electrical, and ventilation, as well as standards for the structural integrity and interior of rental housing.

The RDLC requires rental property owners to have their properties inspected for compliance with the HMC every three years. The RDLC initially required rental property owners to obtain a temporary permit within 120 days of enactment of the ordinance. The permitting provision allowed the City to collect information for a database of rental property owners and rental addresses in the City. No fee and no inspection of the rental property were required to obtain the temporary permit.

For purposes of administering the rental inspections, the City was divided into three different zones. Zone 1 rental properties were to be inspected in 2006, Zone 2 in 2007, and Zone 3 in 2008. Rental properties found to be in compliance with the HMC and RDLC would receive a three-year operating license. Red Wing City Ord. § 4.31, subd. 1(1). Properties not in compliance would receive a written compliance order

setting forth the violations and allowing a reasonable time to cure them.   § 4.31, subd. 2(4).   On February 28, 2006, the City sent letters to Zone 1 rental property owners, including plaintiffs, requesting that the owners contact the City by March 17, 2006, to schedule an inspection.  Just one of the ten plaintiffs-landlords responded to this request. City staff called landlords who had not responded to the requests and attempted to schedule inspections.   When these attempts proved unsuccessful, Red Wing City Attorney Jay Squires sent letters to Zone 1 property owners who had not scheduled inspections, stating that if they did not respond by August 15, 2006, the City would seek the assistance of a court in gaining access to their properties for inspection.

Plaintiffs objected to the City's request to inspect their rental properties and stated that the City would need to obtain a warrant to do so.[2]  On November 1, 2006, the City filed an application in Goodhue County state court to inspect various Zone 1 rental properties, including plaintiffs' rental properties.  Plaintiffs responded by challenging the warrant application on grounds that the ordinance did not by its terms authorize the zone-based inspections sought by the City.

On November 15, 2006, plaintiffs filed a separate action in Goodhue County state court pursuant to 42 U.S.C. § 1983, challenging the City's rental inspection ordinance on Fourth   Amendment   grounds   and   asking   the   court   to   declare   the   ordinance

_____

[2] Plaintiff Timothy McKim initially scheduled an inspection, but then cancelled the inspection and informed the City that it would need to obtain a warrant to inspect his rental property.

unconstitutional and enjoin its enforcement.  The City removed the action to this Court in December 2006.

Following their commencement of the § 1983 action, plaintiffs filed a motion to stay the pending state court warrant proceeding, arguing that the state court should refrain from taking any further action on the City's warrant application because similar issues were raised in the pending federal action.  The state court denied plaintiffs' motion for a stay on March 2, 2007.  The court determined that the warrant proceeding, and not the pending federal action, provided the most comprehensive resolution of the issues and that the federal case "could never provide an opportunity for the City to obtain an administrative warrant."[3]

On August 30, 2007, the state court denied the City's warrant application on non-constitutional grounds, finding that the ordinance authorized an inspection only when (1) a rental license application had been executed and (2) there was reason to believe a code violation exists.  Because neither condition existed with respect to plaintiffs, the court denied the City's warrant application.

The City subsequently amended the HMC and RDLC.  The amended RDLC specifically authorizes zone-based inspections of rental units, and continues to require landlords in Red Wing to have an operating license or a temporary permit to lease rental units.  Landlords can obtain a temporary permit without paying a fee or undergoing an inspection.  The temporary permits are valid only until a license is obtained, or for three

---

[3] The court also noted that a federal court might abstain from interfering in an ongoing state court action in accordance with the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 (1971).

years for all temporary permits issued prior to October 8, 2007. Plaintiffs have obtained three-year temporary permits that will remain in effect until 2009.

To obtain an operating license, the rental unit must be inspected by the City to determine whether it complies with the HMC. The RDLC requires that the City first seek the consent of the landlord and tenant. The inspection must occur during ordinary business hours unless otherwise scheduled with the landlord and tenant, and is limited to an inspection of that which is necessary to determine compliance with the HMC. Owners and tenants may request to be present during the inspection, so long as they identify a date and time within two weeks of the request for an inspection. If the City does not obtain consent from the landlord and tenant, the RDLC requires the City to apply for an administrative search warrant, and the reviewing court is specifically authorized to condition or limit the scope of the warrant. To date, none of the plaintiffs has consented to have his or her rental property inspected by the City, and none of those properties have yet been searched or inspected by the City.[4]

Plaintiffs' complaint asserts six causes of action against the City. Counts 1 and 2 allege that the City's inspection ordinance is facially invalid under the Fourth Amendment and the Minnesota Constitution because it conditions plaintiffs' right to rent property on their submission to an inspection. Counts 3 and 4 allege that the RDLC, as applied to plaintiffs' conduct, violates the Fourth Amendment and the Minnesota Constitution because the searches it authorizes are not subject to traditional warrant

---

[4] Plaintiffs Jesse Stewart and Ann Taylor – the two tenant-plaintiffs in this case – also have not had their rental units inspected.

requirements.   Finally, counts 5 and 6 allege that the RDLC violates the Fourth Amendment and the Minnesota Constitution because it lacks reasonable administrative and legislative standards, allowing the City to seek warrants without detailing how properties are selected for inspection and without describing the particular places and things to be searched.   Plaintiffs seek a declaration that the City's inspection ordinance violates the Fourth Amendment and ask the Court to enjoin the City from enforcing the ordinance.   Plaintiffs also seek nominal damages as well as attorney's fees and costs. Following defendants' removal of the action to this Court, the parties filed cross-motions for summary judgment on plaintiffs' claims.

During the pendency of this action, the City began seeking consent from Zone 1 tenants and landlords to conduct rental inspections in accordance with the RDLC amendments.   On March 13, 2008, the City again filed an application in Goodhue County state court for an administrative search warrant to inspect plaintiffs' dwellings.   Plaintiffs then filed a motion for a temporary restraining order and preliminary injunction in this action, asking this Court to enjoin any further state court proceedings with respect to the City's warrant application pending resolution of its constitutional challenge to the inspection ordinance.[5]

---

[5] A state court hearing on the warrant application was initially scheduled for April 11, 2008.   Following plaintiffs' motion for a temporary restraining order, the parties agreed to reschedule the warrant application hearing for May 2, 2008, and submitted briefing to this Court on plaintiffs' motion for a preliminary injunction.   The Court refers to plaintiffs' motion in the remainder of this order as a motion for a preliminary injunction.

## ANALYSIS

## I.   CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.   Standard of Review

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.   Article III Standing

Defendants contend plaintiffs lack Article III standing to challenge the constitutionality of the City's inspection ordinance, either on its face or as applied to plaintiffs' conduct in this case.  "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and Article III standing . . . enforces the Constitution's case-or-controversy requirement."  *Hein v. Freedom From Religion Found., Inc.*, 127 S. Ct. 2553, 2562 (2007) (internal citations omitted).  To establish Article III standing, a plaintiff must show three things.  First, the plaintiff must allege an injury in fact that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Jones v. Gale*, 470 F.3d 1261, 1265 (8th

Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Second, the alleged injury must be traceable to the defendant's challenged action.  *Id.*  Third, it must be "likely" rather than "speculative" that a favorable decision will redress the injury.  *Id.*

The Court agrees with defendants that plaintiffs have not suffered an actual or imminent injury in fact.  Plaintiffs' properties have not in fact been searched or inspected by the City, and no search warrants have been issued by a reviewing state court judge. To the extent plaintiffs contend that the RDLC coerces their consent to an illegal search, none of the plaintiffs in this case has yet consented to a search of his or her rental property.  Rather, plaintiffs have insisted on exercising their Fourth Amendment rights, demanding that the City seek an administrative warrant from a reviewing state court judge.  Indeed, plaintiffs successfully challenged the City's first warrant application, effectively insulating their constitutional rights from injury through state court litigation. Further, plaintiffs continue to rent property through the use of temporary rental permits that expire in 2009.

Nor have plaintiffs demonstrated that injury to their Fourth Amendment rights is imminent.  If landlords refuse consent to the City's request for an inspection, the RDLC requires the City to seek an administrative search warrant.  The reviewing judge is specifically authorized to condition or limit the scope of the warrant as appropriate. Plaintiffs' argument that the inspection ordinance creates an imminent constitutional injury presumes that a state court judge, with the benefit of a full adversarial hearing, will be unable to condition or limit the scope of the warrant in a manner that complies with

the Fourth Amendment. The Court finds the possibility of such injury to be highly speculative. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (finding plaintiff lacked standing to seek an injunction of a police chokehold procedure because he failed to establish a real and immediate threat that he would be stopped by officers in the future and subjected to the chokehold); *Smook v. Minnehaha County*, 457 F.3d 806, 816 (8th Cir. 2006) (holding that plaintiffs lacked Article III standing because "attempting to anticipate whether any of the plaintiffs would actually be detained and strip searched would take us into the area of speculation and conjecture"); *Johnson v. State of Mo.*, 142 F.3d 1087, 1089-90 (8th Cir. 1998) (finding plaintiffs lacked Article III standing to challenge a state statute imposing sanctions for frivolous inmate lawsuits because no court had yet determined plaintiffs' lawsuits to be frivolous); *see also Tobin v. City of Peoria*, 939 F. Supp. 628, 635 (C.D. Ill. 1996) (finding the possibility that defendant-city would violate landlords' Fourth Amendment rights, where defendant agreed to seek an administrative warrant from a reviewing judge, too speculative to create an immediate and real injury).

Nothing in the record suggests to this Court that a reviewing state court could not adequately review and limit the City's warrant application to ensure the warrant complies with the Fourth Amendment. To the contrary, on August 30, 2007, the state court quashed the City's first application for an administrative warrant, resulting in the City's decision to amend the RDLC to authorize zone-based inspections. While the reviewing judge did not reach constitutional issues with respect to the warrant application, these

proceedings suggest that a reviewing state judge will be sensitive to the constitutional rights at stake for plaintiffs and wholly capable of protecting those rights.

Plaintiffs make several arguments in support of the contention that they have Article III standing to pursue their claims.  Plaintiffs first argue that defendants waived this jurisdictional defense by removing the complaint to federal court.  However, Article III standing cannot be waived by the parties, nor can litigants consent to have the Court issue a non-binding advisory opinion.  *See Sierra Club v. Robertson*, 28 F.3d 753, 757 n.4 (8th Cir. 1994); *see also Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006) (stating that Article III standing is "an inescapable threshold question").  Thus, even where a defendant removes a case to federal court, "the party asserting federal jurisdiction when it is challenged has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 894 (D. Ariz. 2007) (stating that "[t]he fact of removal does not change plaintiff's burden as to standing").

Plaintiffs further argue that the very risk of litigation in this case is sufficient to establish an injury in fact for Article III standing.  However, the *Columbia Basin* case cited by defendants cannot be read to support such a broad proposition.  That case involved a challenge to a city ordinance that conditioned landlords' rental licenses on submission to a mandatory inspection.  *See Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791, 796 (9th Cir. 2001).  The mere refusal to consent to a search in *Columbia Basin* resulted in a violation of the ordinance and the commencement of civil eviction proceedings, civil penalties, and the revocation of business licenses.  *Id.*  The Ninth

Circuit determined that plaintiff-tenants had Article III standing because eviction was a concrete injury resulting from violation of the ordinance, and that the injury was imminent because civil proceedings had been commenced against them. *See id.* at 797. Here, by contrast, refusal to consent to an inspection is not a violation of the ordinance, but rather requires the City to seek an administrative warrant and triggers a state court hearing on the validity of the warrant. Unlike the litigation in *Columbia Basin*, these proceedings are actually more protective of plaintiffs' constitutional rights. The Court therefore finds that the risk of litigation to plaintiffs in this case is not sufficient to establish an actual or imminent injury for Article III standing.

Finally, plaintiffs contend that Article III standing exists to challenge an unreasonable search before the search takes place where the municipality has a "pattern and practice" of conducting illegal searches. *See Lankford v. Gelston*, 364 F.2d 197 (4th Cir. 1966). The Court disagrees. The issue in *Lankford* was whether the defendant's voluntary cessation of an illegal search practice rendered plaintiffs' claims moot and thus precluded the court from entering an injunction against the police department. *See id.* at 203 ("Police protestations of repentance and reform timed to anticipate or to blunt the force of a lawsuit offer insufficient assurance that similar raids will not ensue when another aggravated crime occurs.") (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). At least one named plaintiff in *Lankford* had actually had his home searched, and the court did not address the constitutional requirements for Article III standing. *See id.* at 200. Here, by contrast, no searches have been conducted and no plaintiff has yet consented to a search.

In sum, plaintiffs have failed to establish a sufficient injury in fact – either actual or imminent – to support Article III standing in this case.[6]  A reviewing state court judge stands between the City's power to search and the plaintiffs' Fourth Amendment rights, making plaintiffs' constitutional injury too speculative for this Court to afford relief under Article III.  Because plaintiffs lack Article III standing, the Court need not address the substance of plaintiffs' facial and as-applied challenges to the City's rental inspection ordinance, which present difficult questions of Fourth Amendment doctrine.  The Court notes, however, that the very things that deprive plaintiffs of Article III standing in this case – including the presence of a reviewing judge and the RDLC's administrative warrant requirement – may also stand in the way of plaintiffs' substantive claims by rendering the inspection ordinance reasonable under the Fourth Amendment.  *See, e.g.*, *Camara v. Municipal Court*, 387 U.S. 523, 536-37 (1967) (finding that an area-wide housing code inspection conducted pursuant to an administrative warrant or with owner's consent is reasonable, balancing the need to search against the invasion that the search entails); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323 (1978) (finding that warrantless OSHA inspections violated Fourth Amendment, but that "[a] warrant . . . would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria").

---

[6] Given the strength of defendants' argument as to the injury in fact standing requirement, the Court need not address in detail the two remaining standing requirements under *Lujan*.  *See* 504 U.S. at 560.  However, the Court notes that, for many of the same reasons discussed with respect to the injury requirement, it is speculative that a favorable decision from this Court would redress the alleged Fourth Amendment violation, since that injury is itself hypothetical.

Ultimately, however, this Court lacks the power to adjudicate those claims. For these reasons, the Court grants defendants' motion for summary judgment, denies plaintiffs' motion for summary judgment, and dismisses plaintiffs' complaint without prejudice.

## II.    PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

On March 13, 2008, while the parties' cross-motions for summary judgment were pending before this Court, the City filed an application for an administrative search warrant in Goodhue County state court. Plaintiffs then filed a motion for a preliminary injunction, asking this Court to enjoin the City's application for a search warrant pending resolution of their constitutional challenge to the inspection ordinance.[7] In determining whether a party is entitled to a preliminary injunction, the Court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

Because the Court grants defendants' motion for summary judgment and dismisses plaintiffs' complaint, plaintiffs' motion for a preliminary injunction is effectively moot. Even applying the *Dataphase* factors, however, plaintiffs are not entitled to an injunction for the same reasons discussed with respect to the parties' cross-motions for summary

---

[7] Plaintiffs also filed a motion to dismiss without prejudice plaintiff Michele McCaughtry from this action. Because the Court grants defendants' motion for summary judgment and dismisses this action for lack of subject matter jurisdiction, plaintiffs' motion is denied as moot.

judgment.[8]   Plaintiffs have not shown an "actual or imminent" violation of their Fourth Amendment right to be free from unreasonable searches and seizures, and thus lack Article III standing to pursue their claims in this Court.  *See Lujan*, 504 U.S. at 560.  As such, plaintiffs cannot succeed on the merits of their underlying constitutional claims at this time, and the impending constitutional violation is too speculative and conjectural to afford injunctive relief.  *See Goff v. Harper*, 60 F.3d 518, 521 (8th Cir. 1995) (finding that even where the harm alleged would be irreparable, plaintiff failed to show a threat of irreparable harm where the threat of harm was "too remote").

Further, because the threat of harm to plaintiffs' constitutional rights is highly speculative, it is necessarily outweighed by the potential injury to the City caused by

---

[8] Defendants also argue the Court should abstain from exercising jurisdiction over an ongoing state court proceeding under the doctrine of *Younger v. Harris*, 401 U.S. 37, 44 (1971), which establishes three general requirements for abstention.  Because plaintiffs have not established Article III standing, this Court lacks subject matter jurisdiction to consider their constitutional claims and need not decide whether it should decline to exercise jurisdiction on the alternative ground of abstention.  *See Saatchi & Saatchi Bus. Commc'ns v. Just for Feet, Inc.*, 64 F. Supp. 2d 207, 209 (W.D.N.Y. 1999).  The Court notes, however, that the City likely satisfies the second and third requirements of *Younger*.  There is little question that the warrant application implicates an important state interest in ensuring that rental housing does not endanger the health or safety of tenants and the community as a whole.  *See, e.g., Columbia Basin Apt. Ass'n*, 268 F.3d at 801 (finding defendant City has a strong interest in maintaining habitable dwellings for its residents).  Further, the state court proceeding provides an adequate opportunity to litigate constitutional issues with respect to the City's search warrant application.

A closer question arises with respect to whether there is an ongoing state judicial proceeding in this case.  Although this § 1983 action was commenced well in advance of the City's *second* warrant application, the Court notes that plaintiffs commenced this action two weeks after the City's *initial* warrant application.  While the City's application was eventually denied, the City has effectively been engaged in securing an administrative warrant for zone-based inspections ever since, making amendments to the RDLC and filing the second warrant application on March 13, 2008.  The City's actions arguably give rise to an ongoing state proceeding, making abstention appropriate under *Younger*.  Ultimately, however, the Court need not decide at this time whether to abstain because the Court lacks subject matter jurisdiction to adjudicate plaintiffs' claims.

granting plaintiffs' motion.  In particular, the Court notes that the City has been engaged in the process of beginning zone-wide property inspections for the better part of three years.  Granting injunctive relief would only delay that process further.  Finally, the public interest factor weighs in favor of the City.  The implementation of a rental inspection ordinance designed to ensure safe and clean rental housing is surely in the public interest.  In sum, the *Dataphase* factors weigh against granting plaintiffs' motion for a preliminary injunction.  Accordingly, plaintiffs' motion is denied.

## ORDER

Based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion for Summary Judgment [Docket No. 43] is **GRANTED**.

2.    Plaintiffs' Motion for Summary Judgment [Docket No. 53] is **DENIED**.

3.    Plaintiffs' Motion to Dismiss without Prejudice [Docket No. 271] is **DENIED as moot**.

4.    Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 281] is **DENIED**.

5.    Plaintiffs' Complaint is **DISMISSED without prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:    May 1, 2008                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                               United States District Judge